UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

AGNELO GONSALVEZ, RALPH BARRETO, ALEX MENEZES,
VIANO RODRIGUEZ, ALBINO FERNANDES,
CAETANO P. FERNANDES, CAETANO M. FERNANDES,
CASTANO G. DIAS, PHILIP RODRIGUEZ,
JOSE BONIFACIO ESTEVES, PIEDADE CAETANO FERNADES,
MARCELINO FERNANDES, ANTONY MARIO LOBO,
ANTONIO PEDRO FERNANDES, PEDRO RODRIGUES,
RAMES CHITNISIS, UMAKANT CHODANKAR,
ATANASIO MENEZES, CIRILIO SILVEIRA,
REGINALDO PEREIRA, BRAZIHNO D'SOUZA.

    Plaintiffffs

v.

CELEBRITY CRUISES, INC.
    Defendant
_____/

## SEAMAN'S COMPLAINT TO VACATE ARBITRATION DECISION

COME NOW, AGNELO GONSALVEZ, et. al. (hereinafter "the seafarers") by and through undersigned counsel and hereby file their Complaint to Vacate the Arbitration Award issued by arbitrator Robert B. Hoffman on January 22, 2011, and in support thereof allege as follows:

### I. GENERAL ALLEGATIONS, JURISDICTION AND VENUE

1.    This is an action seeking to vacate an arbitration award pursuant the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517 (the "Convention"), and its implementing legislation, 9 U.S.C. §202-208 (hereinafter "Convention Act"). This Court has jurisdiction pursuant to 28 U.S.C. §1331.

1

2. Venue is proper in the Southern District of Florida because the arbitration hearing was held in Miami, Florida at 701 Brickell Avenue, Suite 3000, Miami, Florida 33131.

3. The underlying claims in this action arise out of Defendant employer Celebrity's wrongful conduct, consisting in requiring employees - working as stateroom attendants aboard employer's ships – to share a substantial share of their earned wages with other employees (for a period of approximately three years); conduct in clear breach of their employment contracts and in violation of the Seaman's Wage Act, 46 U.S.C. §10313.

4. On September 22, 2009 Plaintiffs' submitted their demand for arbitration to Defendant Celebrity and Federazione Italian Transporti (hereinafter "Union").

5. Celebrity and the Union appointed Robert B. Hoffman as arbitrator of the proceedings. At all times material, Celebrity and the Union exchanged names of proposed arbitrators without the seafarers knowledge or input. Further, Celebrity and the Union unilaterally appointed an arbitrator with minimal experience or knowledge in maritime matters, and in particular seamen wage law.[1]

6. The Plaintiffs objected to the selection of Robert B. Hoffman and filed a Motion for Recusal. The arbitrator denied the Plaintiffs' Motion for Recusal. *See* Motion for Recusal and Order Denying Motion to Recuse, Exhibit "2."

7. On or about October 8, 2010, Defendant Celebrity moved to dismiss Plaintiffs claims at arbitration arguing that the Seafarers claims were "non-arbitrable due to the Claimants' failure to

---

[1] The Union's involvement in this matter has been limited to appointing the arbitrator with employer Celebrity. The Union never advocated on behalf of the seafarers or argued in the seafarers favor. Therefore, for all purposes, this was an arbitration with only two participants: Celebrity and the employee-Seafarers. Only one of the participants to the arbitration (employer Celebrity), however, had a say in the selection and appointment of the arbitrator.

submit grievances" based on a 30 day time period contained in a collective bargaining agreement *<u>that the plaintiff seafarers never even knew existed</u>*.

8.      On January 7, 2011, a one (1) day arbitration hearing was held in Miami, Florida at the offices of counsel for Celebrity.

9.      On January 22, 2011, the arbitrator granted Celebrity's Motion to Dismiss, holding that the seafarers claims were non arbitrable for failing to file their grievance within 30 days ("CBA"). A true and correct copy of the arbitrator's ruling is attached hereto as Exhibit "1."

10.     The Seafarers timely file the instant Complaint seeking an order from this Court vacating the Arbitrator's Decision, pursuant to Article V of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517 (the "Convention"), "[r]ecognition and enforcement of an arbitral award may be refused if the competent authority in the country where the recognition and enforcement is sought finds that … [t]he recognition and enforcement of the award would be contrary to the public policy of that country."

In doing so, the test is whether the award offends some basic principle of justice or morality or threatens to frustrate some urgent public necessity. *See Rintin Corp. S.A. v. Domar, LTD.,* 476 F. 3d 1254 (11th Cir. 2007); *Lindo v. NCL (Bahamas), Ltd.*, 652 F. 3d 1257 (11th Cir. 2011) ("Having permitted the arbitration to go forward, the national courts of the United States will have the opportunity at the award-enforcement stage to ensure that the legitimate interest in the enforcement of […] laws has been addressed … The Convention reserves to each signatory country the right to refuse enforcement of an award where the 'recognition or enforcement of the award would be contrary to the public policy of that country.").  Herein, as explained more fully below, the arbitral awards violates longstanding public policy, which is that the plaintiff seafarers are wards of the Admiralty Courts, to be vigorously protected from the conduct of their

unscrupulous ship-owners. The unscrupulous conduct is crystal clear as the Plaintiff seafarers were deprived of their day in court by a contractual provision (requiring them to file their grievance within 30 days) they were never even made aware of.

## II. FACTUAL AND PROCEDURAL BACKGROUND

11.     For the benefit of the Court and to provide context to Plaintiffs' claims; Plaintiffs first set forth the following procedural and factual background to the arbitration herein.

### *The Underlying Claims*

12.     On May 14, 2001, Celebrity and *Federazione Italianan Transporti*, the labor union, entered into a Collective Bargaining Agreement ("CBA") allegedly covering the Seafarers as part of a purported "bargaining unit" consisting of cabin stewards.

13.     Both the CBA and the Plaintiffs' employment contracts established the seafarers compensation from two sources: base pay and gratuities. Since basic pay consisted of only $50.00 per month, the majority of the Seafarers' wages were gratuities from passengers. Under the gratuity payment scheme, set forth in the CBA, Celebrity was required to recommend to its passengers that they pay gratuities in accordance with an incorporated pay scale in the CBA.[2]

14.     Throughout the course of the Seafarers employment, Celebrity widely disseminated to passengers the recommended gratuity for stateroom attendants. This included brochures, announcements and other materials.

15.     Beginning on or before August 31, 2002, Celebrity placed "*assistant* cabin stewards" or "*assistant* stateroom attendants" on its ships. It is important to note that although the CBA made

---

[2] With regard to Group C employees, the CBA provides, in part:" **Employer will Recommend That Passengers Pay Gratuities According to the Following Scale:**
**Cabin Steward   USD 3.50 Per Passenger Per Day**
Waiter                              USD 3.50 Per Passenger Per Day
Assistant Waiter  USD 1.50 Per Passenger Per Day" (Emphasis added).

reference to cabin stewards, waiters, and *assistant* waiters, nothing in the subject CBA contained any reference to an employment position titled "*assistant cabin stewards*."

16. Despite the CBA's provisions, clearly delineating Celebrity's obligations, Celebrity breached the CBA by: 1) requiring the Seafarers to pay/share their earned wages with the *assistant* cabin stewards at a rate of $1.20 per passenger, per day, and 2) requiring the above named seafarers to pay/share their earned wages with the Chief Housekeeper, at a rate of $0.50 per passenger, per day.

17. Celebrity's wrongful conduct continued until January 1st 2005, when the Company changed the terms of the CBA.

### *The Grievance Procedure and the Arbitration Provision under the CBA*

18. **The Grievance Procedure:** Article 26 of the CBA provides, in part, the following grievance procedure:

> **Unless Extenuating Circumstances exist justifying delay, no grievance shall be recognized if raised more than thirty (30) days after the Seafarer has left the vessel**… If the Seafarer feels that a provision of this agreement has been violated or that he/she has been unfairly treated, the seafarer shall have the right either personally or through a fellow seafarer spokesperson, to present the complaint to his/her department head and, if the seafarer remains dissatisfied, to the Master. If the grievance remains unresolved, the decision of the Master shall govern until the grievance can be resolved by the representatives of the Company and the Unions.

*Id.* (emphasis added).

19. **The Arbitration Provision:** Article 26 of the CBA also provides, in part the following arbitration provision:

> Grievances and disputes arising on the vessels or in connection with this Agreement which cannot be resolved on board or between the parties shall be referred to the arbitration… If a matter is not resolved within forty-eight (48) hours after the conference, either party may refer it to an arbitrator for final resolution. Arbitrator to be jointly appointed by the Union and the Company. The place of arbitration shall be either the country of the seafarer's citizenship or Miami, Florida.

*Lobo v. Celebrity Cruises*, *Case No. 04-22132*-**GOLD (S.D. Fla. 2005).**

20.     In light of Celebrity's breach of the CBA, on July 29, 2004 seafarer Inacio Lobo brought a lawsuit in Florida State Court against Celebrity for Celebrity's violations under the Seamen's Wage Act, 46 U.S.C. § 10313. At that time, seafarer Inacio Lobo (not a Plaintiff in this action) filed a complaint as a proposed class action, on his own behalf as well as on behalf of all other similarly situated Celebrity cabin stewards, including the above named Plaintiffs. In effect, Mr. Lobo was acting as Plaintiffs' *spokesperson*. On April 11, 2005 the lawsuit was removed to Federal Court.

21.     At that time, Celebrity <u>*did not*</u> seek to compel the grievance procedure. Further, Celebrity <u>*did not*</u> raise or assert any defenses concerning "untimely filing of grievances." Further, Celebrity did not even represent to the Federal Court, that the Seafarer's claims under the CBA were "non-arbitrable." Instead, Celebrity made the deliberate choice of skipping the grievance procedure under the CBA, and directly moved the Federal Court to compel resolution of the dispute at arbitration – arguing that the claims *were* arbitrable.

22.     The Court, citing the CBA's arbitral provision,[3] compelled Mr. Lobo to litigate the merits of those claims at arbitration. Judge Gold's order compelled only arbitration – not the grievance process.  Subsequently, the Eleventh Circuit affirmed the lower Courts order compelling arbitration – *but not* the grievance process. *See Lobo v. Celebrity Cruises Inc.,* 488 F. 3d 891, 894-95 (11th Cir. 2007).

---

[3] Article 26 of the Arbitral provision under the CBA provides in part that "[i]f the matter is not resolved within forty-eight (48) hours after conference, either party may refer it to an arbitrator for final resolution. Arbitrator to be duly appointed by the Union and the Company."

23.     Based on the aforementioned precedent (compelling the arbitration of claims under the aforementioned CBA) the above named Plaintiffs - who have identical substantive wage claims as Mr. Lobo and arising under the same CBA - made their formal demands for arbitration.

24.     Once at arbitration, Celebrity – for the first time *ever*, and contrary to its representations to the Southern District and Eleventh Circuit in *Lobo v. Celebrity Cruises*- argued at arbitration that the claims "were not arbitrable" for the seafarers failure to file their grievances within 30 days.

26.     At all times material, Celebrity's choice *not* to raise or assert any defenses concerning "untimely filing of grievances" in Federal Court in the matter of *Lobo v. Celebrity Cruises* was a deliberate choice of strategy to deprive – not only Mr. Lobo, but also all other former cabin stewards subject to the same CBA (including Plaintiffs' herein) of their day in Court.

27.     Celebrity's deliberate strategy deprived Plaintiffs of their day in Court and their ability to adjudicate their substantive wage claims in any forum. When Lobo on behalf of all the seafarers went to Federal Court, Celebrity moved to compel arbitration – arguing that the claims "were arbitrable." After securing that precedent, when the seafarers went to arbitration, Celebrity argued to the arbitrator that the claims were "non arbitrable" because they failed to timely follow the grievance process within 30 days.  This conduct constitutes a misuse of the judicial process, gamesmanship with our Court system – and a manifest injustice severely prejudicing the Plaintiffs due process rights. Therefore, confirmation of the award is contrary to the public policy of the United States.

**III.     THE ARBITRATOR'S DECISION IS CONTRARY TO THE PUBLIC POLICY OF THE UNITED STATES, PARTICULARLY THE LONGSTANDING TRADITION OF TREATING SEAFARERS AS WARDS OF THE ADMIRALTY COURTS**

28.      Plaintiff adopts and realleges Paragraphs 1 through 27 as if fully set forth herein.

29. Pursuant to Article V of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517 (the "Convention"), "[r]ecognition and enforcement of an arbitral award may be refused if the competent authority in the country where the recognition and enforcement is sought finds that … [t]he recognition and enforcement of the award would be contrary to the public policy of that country."

30. Herein, the significant public policy concern at issue deals with the longstanding tradition of treating seafarers, such as plaintiffs, as wards of the Admiralty Courts.

31. "**Seafarer from the start were wards of admiralty**." *U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 355 (1971) *citing Robertson* v. *Baldwin*, 165 U.S. 275, 287 (1897). In 1823, Justice Story declared:

> Every Court should watch with jealousy an encroachment upon the rights of a seaman, because they are unprotected and need counsel; because they are thoughtless and require indulgence; because they are credulous and complying; and are easily overreached. But Courts of maritime law have been in the constant habit of extending towards them a peculiar, protecting favor and guardianship. They are emphatically the wards of the admiralty
> … *Harden v. Gordon*, 11 Fed. Cas. 480 (No. 6047) (C.C. Me 1823).

As the Court later stated "[f]rom the earliest times maritime nations have recognized that unique hazards, emphasized by unusual tenure and control, attend the work of seafarer." *See Aguilar v. Standard Oil Co. of New Jersey*, 318 U.S. 724 (U.S. 1943). The *Aguilar* Court further held: "the restrictions which accompany living aboard ship for long periods at a time combine with the constant shuttling between unfamiliar ports to deprive the seaman of the comforts and opportunities for leisure, essential for living and working that accompany most land occupations." *Id*., at 728.

In *Chandris, Inc. v. Latsis*, 515 U.S. 347, 355 (1995) (Internal Citations omitted), the Court reaffirmed this longstanding principle that seafarer are wards of the Admiralty Courts as a

8

"feature of the maritime law compensating or offsetting the special hazards and disadvantages to which they who go down to sea in ships are subjected." The Fifth Circuit Court of Appeals explained the rationale for affording seafarers special protections in *Castillo v. Spiliada Maritime Corp.,* 937 F.2d 240, 243 (5th Cir. 1991):

> [Seafarer] enjoy this status because they occupy a unique position. A seaman isolated on a ship on the high seas is often vulnerable to the exploitation of his employer. Moreover, there exists a great inequality in bargaining position between large ship-owners and unsophisticated seafarer. Ship-owners generally control the availability and terms of employment.

Accordingly, the Admiralty Courts have a rich tradition of protection of seafarers, which flowed from the uniquely abhorrent conditions workers face at sea.

It is not just the Courts which recognize the need to protect seafarers, as "[t]he policy of Congress, as evidenced by its legislation, has been to deal with [seafarers] as a favored class." *Bainbridge v. Merchants' & Miners' Transp. Co.,* 287 U.S. 278 (1932).

32.     Herein, **Plaintiff seafarers, wards of the Admiralty Courts for hundreds of years, have been completely deprived on their day in court based on a contractual provision that they did not even know about that in effect limited their statute of limitations to 30 days**.

33.     Plaintiffs have been fighting for nearly a decade to have their rights vindicated. Here the arbitrator's affirmation of Celebrity's conduct completely deprived these seafarers of their day in Court. Since the inception of these claims, Celebrity has at all times material advanced a number of procedural technicalities with the aim to assure that the substantive wages claims of these seafarers are never adjudicated. Thus, enforcement of the award will severely prejudice Plaintiffs rights and is therefore a violation of public policy. *See Rintin Corp. S.A. v. Domar, LTD.,* 476 F. 3d 1254 (11th Cir. 2007); *Lindo v. NCL (Bahamas), Ltd.*, 652 F. 3d 1257 (11th Cir. 2011) ("Having permitted the arbitration to go forward, the national courts of the United States

9

will have the opportunity at the award-enforcement stage to ensure that the legitimate interest in the enforcement of […] laws has been addressed … The Convention reserves to each signatory country the right to refuse enforcement of an award where the 'recognition or enforcement of the award would be contrary to the public policy of that country.'")

**A.     As a matter of law, because Plaintiffs are seafarers, they should be exempt from the hyper-technical requirements of a grievance procedure.**

34.    It is well settled law, that a seaman is not required to exhaust grievance procedures before seeking a resolution of his claims in a tribunal. *See Larkins v. Hudson*, 640 F. 2d 997, 999 (9th Cir. 1980), *citing* the United States Supreme Court in *Bulk v. Arguelles*, 400 U.S. 351 (1971).

35.    In fact, in allowing individual seafarers to bring claims for wages *directly* before a judicial tribunal, in *Bulk v. Arguelles*, the United States Supreme Court established an *exception* for seafarers to the requirement that contract grievance procedures must be exhausted. *See Suissa v. American Export Lines, Inc.,* 507 F. 2d 1343 (2d Cir. 1974), *citing Arguelles*, 400 U.S. at 356.

36.    Under this precedent, seamen are not required to exhaust grievance procedures before seeking a resolution of their claims in a tribunal. *Larkins v. Hudson*, 640 F. 2d 997, 999 (9th Cir. 1980), *citing* the United States Supreme Court in *Bulk v. Arguelles*, 400 U.S. 351 (1971). In fact, in allowing individual seafarers to bring claims for wages *directly* before a tribunal, in *Bulk v. Arguelles*, the United States Supreme Court established an *exception* for seafarers to the requirement that contract grievance procedures must be exhausted. *Suissa v. American Export Lines, Inc.,* 507 F. 2d 1343 (2d Cir. 1974), *citing Arguelles*, 400 U.S. at 356. All in all, through this long-standing principle, the United States Supreme Court declared that a seaman had the option of choosing either route [filing suit in a tribunal or through the grievance process] to enforce his claim. *Id. See also Larkins*, at 999:

> Larkins decided to forgo the grievance process outlined in the Collective Bargaining agreement and to pursue his claims in federal court. **That was his right**. It is well settled law that a seaman is not required to exhaust grievance procedures before seeking a resolution of his wage claims in Court.

37. The arbitrator's entire argument and basis for dismissal is contrary to this well-known and long-standing precedent. Herein, it was undisputed by Celebrity that the claimants are seafarers. By virtue of being seafarers the law exempted them from the requirement of exhausting grievance procedures. As a result, they properly exercised their legal right to 1) bring their wage claims and 2) forego any grievance process.

On this ground alone, Celebrity's Motion to Dismiss should have been denied.

**B.    Shortening the statute of limitations for Seaman's Wage Act Claims to 30 days is contrary to the public policy of the United States.**

38. As set forth above, the Collective Bargaining Agreement in this matter contained a hyper-technical grievance procedure setting forth that:

> "Unless Extenuating Circumstances exist justifying delay, no grievance shall be recognized if raised more than thirty (30) days after the Seafarer has left the vessel."

39. In striking contrast, under the General Maritime Law of the United States, Seaman's Wage Act claims are governed by the doctrine of "laches" which gives seafarers three years or more to file their wage claims. *Powel, et. al. v. Global Marine, LLC a/k/a Global Marine, Inc.*, 671 F. Supp. 2d 830 (E.D. La. 2009).

40. Thus, shortening the limitations period of the seafarers claims from 3 years to 30 days, the seafarers were deprived of their rights under U.S. law, in violation of the public policy of the United States. *See Paladino v. Avnet Computer Technologies, Inc.,* 134 F. 3d 1054 (11th Cir. 1998):

> Federal statutory claims are generally arbitrable because arbitration, like litigation, can serve a remedial and deterrent function, and federal law favors arbitration… **But the arbitrability of such claims rests on the assumption that the arbitration**

11

> **clause permits relief equivalent to court remedies.** *See Glimer,* 500 U.S. at 28. **When an arbitration clause has provisions that defeat the remedial purpose of the statute, therefore, the arbitration clause is not enforceable**.
>
> **This clause defeats the statute's remedial purposes because it insulates Avnet from Title VII damages and equitable relief**. *Cf. Brisentine v. Stone & Webster Eng'g Corp.,* 117 F. 3d 519, 526-27 (11th Cir. 1997) … Arguably, Paladino could hope for a finding of liability from the arbitrator. In that event, she would still have to repair to a judicial forum to pursue any Title VII remedy. **These difficulties considered, we treat this clause as an impermissible waiver of Title VII rights**. *See Alexander Gardner-Denver Co.,* 415 U.S. 36, 51-52 (1974); *Schwartz v. Florida Bd. of Regents*, 807 F. 2d 901, 906 (11th Cir. 1987).
> … **A clause such as this one that deprives an employee of any hope of meaningful relief**, while imposing high costs on the employee, undermines the policies that support Title VII. **It is not enforceable**.

*Id.,* (emphasis added).[4] *See also* Fla. Stat. §95.03 (2012) ("Any provision in a contract fixing the period of time within which an action arising out of the contract may be begun at a time less than that provided by the applicable statute of limitations is void.")

41.     Moreover, the arbitrator's ruling was premised on the fact that the Plaintiffs *had* knowledge of Celebrity's hyper-technical grievance procedure requiring submission of claims within 30 days.

42.     In fact, the opposite is true. At the arbitration, the Plaintiffs submitted sworn declarations setting forth that they: 1) never received copies of any collective bargaining agreements; 2) were never informed and therefore never knew that they were members of a labor union; 3) never knowingly paid any union fees (this is so because during the relevant period Celebrity – *not the employees* – paid for union dues); 4) never met, talked, corresponded with any representative of

---

[4] *See Anders v. Hometown Mortgage Services, Inc.,* 346 F. 3d 1024 (11th Cir. 2003) (holding that *Paladino* is the law in the Eleventh Circuit, stating "[t]hat decision [*Paladino*] is the law of this Circuit … [*Ft. 6*] The opinions in ***Paladino*** are presented in a confusing way. Chief Judge Hatchett's opinion is presented first, but no other member of the panel joined it, 134 F. 3d at 1055. The opinion of the Court is that of Judge Cox, joined as it was by Judge Tjoflat, *id.* at 1060; *cf. McMahan v. Toto,* 311 F. 3d 1077, 1080 (11th Cir. 2002) ("Two is a majority of three, and a majority of participating judges controls a court's decision.")).

Federazione Italianan Transporti ("Union"), or any other union; 5) never attended any union meetings, or any other meetings where rights to submit grievances under Collective Bargaining Agreements were discussed; 6) were never informed by either Celebrity or representative from any union that in the event of a dispute concerning their wages, they were required to submit their claims to a union in Italy and to Celebrity in Miami within 30 days. *See* Seafarers affidavits (submitted to the arbitrator) attached hereto as Exhibit "3."

43. Further, the Plaintiffs showed that Celebrity not only prevented these seafarers from participating in the collective bargaining process, but also failed to communicate to them the contents of a CBA negotiated behind closed doors. Therefore, in light of their lack of knowledge, Celebrity could not expect to have employees follow hyper-technical grievance procedures, when its own business practice was to conceal the information of such grievance procedures from the employees themselves. *Id.*

44. Thus, Plaintiffs had a factual basis to support their assertions. At the very least, the Plaintiffs' declarations raised issues of material fact, such that there were questions of fact regarding whether the seafarers in fact *knew* that they had to file grievances within 30 days.

45. In the end, the arbitrator's decision has effectively deprived these seafarers of their day in Court. Since the inception of these claims, Celebrity has at all times material, advanced a number of procedural technicalities with the aim to assure that the substantive wages claims of these seafarers are never adjudicated. Enforcement of the arbitrator's decision severely prejudices Plaintiffs rights and is therefore a violation of public policy.

WHEREFORE, Plaintiffs request 1) that the arbitration decision be vacated, 2) that the Grievance and Arbitration provision in Article 26 of the subject Collective Bargaining Agreement be

declared void as against public policy for depriving Plaintiff of their rights under U.S. law, and 3) allow the Plaintiffs to re-file their claims in Federal District Court and seek relief therein.

*Respectfully submitted*,

LIPCON, MARGULIES,
ALSINA & WINKLEMAN, P.A.
Attorney for Plaintiff
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida  33131
Telephone:  (305)  373-3016
Facsimile: (305) 373-6204
cllinas@lipcon.com

By:  /s/ *Carlos Felipe Llinás Negret*
CARLOS FELIPE LLINÁS NEGRET
Florida BAR NO 73545
MICHAEL A. WINKLEMAN
Florida BAR NO 36719