UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-22287-CV-LENARD

AGNELO GONSALVEZ, et al.,

      Plaintiffs,

v.

CELEBRITY CRUISES, INC.,

      Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (D.E. 9) AND DENYING DEFENDANT'S MOTION FOR SANCTIONS (D.E. 10)

**THIS CAUSE** is before the Court on Defendant Celebrity Cruises, Inc.'s Motion to Dismiss (D.E. 9, 7/11/12) and Motion for Sanctions (D.E. 10, 7/11/12).  Plaintiffs filed Responses to each Motion (D.E. 13, D.E. 8/9/12; D.E. 14, 8/9/12) and Defendant filed Replies (D.E. 15, 8/14/12; D.E. 16, 8/14/12).  Having reviewed the referenced filings, the related pleadings, and the record, the Court finds as follows.

### I.      Background

Plaintiffs in this case are twenty citizens of India who worked as stateroom attendants on Celebrity cruise ships.  (See Complaint, D.E. 1 ¶ 3; Response to Motion to Dismiss, D.E. 13 at 3.)

The terms of Plaintiffs' employment were governed by a collective bargaining agreement, which contained a mandatory grievance and arbitration process.  (Id. ¶¶ 12, 13, 18–19.)  If an employee believed that the collective bargaining agreement was

violated or that he was being treated unfairly, the agreement required him to file a grievance within thirty days of departure from his vessel.  (Id. ¶ 18.)  Any unresolved grievances would then be referred to arbitration, which would take place either in the employee's country of citizenship or Miami, Florida.  (Id. ¶ 19.)

In September 2009, Plaintiffs submitted a demand for arbitration to Celebrity.  (Id. ¶ 4.)  Plaintiffs alleged that between August 2002 and January 2005, Celebrity violated the collective bargaining agreement by requiring them to share gratuities with assistant cruise staff-members.  (Id. ¶¶ 15–17.)

Celebrity moved to dismiss Plaintiffs' arbitration claims, arguing that Plaintiffs failed to raise any timely grievances before demanding arbitration.  (Id. ¶ 7.)  In response, Plaintiffs submitted sworn declarations that they were unaware of their labor union membership, of the collective bargaining agreement governing their employment, and of the "hypertechnical requirements of the grievance procedure."  (Id. ¶ 42; Arbitrator's Decision, D.E. 1-3 at 13.)

An arbitration hearing was held in Miami on January 7, 2011.  (Id. ¶ 8.)

On January 22, 2011, the arbitrator granted Defendant's motion to dismiss.  (Id. ¶ 9; Aribitrator's Decision, D.E. 1-3 at 20.)  The arbitrator concluded that Plaintiffs' claims were non-arbitrable for failure to file predicate grievances in accordance with the collective bargaining agreement.  (See Complaint, D.E. 1 ¶ 9.)  The arbitrator acknowledged and analyzed Plaintiffs' sworn declarations but did not find them credible. (Arbitrator's Decision, D.E. 1-3 at 13–17.)

2

On June 19, 2012, Plaintiffs filed this action "seeking to vacate [the] arbitration award pursuant [to] the Convention on the Recognition and Enforcement of Foreign Arbitral Awards." (Id. ¶ 1.)  Plaintiffs seek to vacate the arbitrator's decision as contrary to public policy.  (Id. ¶¶ 29–45.)  Plaintiffs claim that enforcement of the decision disenfranchises seafarers, that enforcing the thirty-day grievance period contravenes general maritime law and U.S. Bulk Carriers, Inc. v. Arguelles, 400 U.S. 351 (1971), and that the arbitrator improperly ignored their sworn declarations in rendering his decision.  (See id. ¶¶ 30–45.)  Plaintiffs also stress that in a related wage dispute, see Lobo v. Celebrity Cruises, Inc., 488 F.3d 891 (11th Cir. 2007), Celebrity never invoked the grievance procedure as necessary condition precedent to arbitration.  (Complaint, D.E. 1 ¶ 20–22.)  Plaintiffs argue that enforcing the grievance procedure in this case thus constitutes a "misuse of the judicial process, gamesmanship with our Court system – and manifest injustice severely prejudicing the Plaintiffs['] due process rights."  (Id. ¶ 27.)

## II.    Motions

Celebrity moves to dismiss Plaintiffs' action pursuant to Federal Rule of Civil Procedure 12(b)(6).  (See Motion to Dismiss, D.E. at 1.)  Celebrity argues first that Plaintiffs' action is time-barred.  (Id. at 3.)  Celebrity stresses that this is an action to vacate an arbitration award and was not brought in response to a motion to enforce.  (Id. at 2–3.)  Celebrity argues that because the Convention is silent on when motions to vacate arbitration awards must be filed, the Federal Arbitration Act's three-month statute of limitations applies.  (Id. at 3.)  This action was filed more than three months after the arbitration decision was rendered, so Celebrity argues that the action is untimely.  (Id.)

3

Celebrity further argues that the grounds asserted for vacating the arbitration decision are without merit and have been rejected by this Court before. (Id. at 4–9.) Celebrity also moves for sanctions against Plaintiffs for mounting a time-barred and otherwise baseless attack on the arbitration award. (See Motion for Sanctions, D.E. 10 at 1–3.)

Plaintiffs respond that their claim is not time-barred. (See Response to Motion to Dismiss, D.E. 13 at 11.) Plaintiffs argue that because they are citizens of India, this action is governed exclusively by the Convention and not Chapter 1 of the Federal Arbitration Act. (Id. at 12.) The Convention sets forth a three-year statute of limitations for actions seeking enforcement of arbitration awards, and Plaintiffs argue that that limitations period applies in this case. (Id.) Plaintiffs further maintain that the arbitrator's decision enforcing the thirty-day grievance requirement is contrary to public policy. (See id. at 16.) Plaintiffs also argue that their action does not warrant sanctions, because they have a right to challenge the arbitrator's decision, their case has legal merit, and they may advance reasonable arguments for the extension, modification, or reversal of existing law. (See Response to Motion for Sanctions, D.E. 14 at 3–10.)

### III.    Applicable Standards

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A Rule 12(b)(6) dismissal on statute of

limitations grounds is appropriate if it is apparent from the face of the complaint that the claim is time-barred.  La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

    **IV.   Discussion**

        **a.  Motion to Dismiss**

            **i.  Statute of Limitations**

Chapter 1 of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, provides that a written agreement to arbitrate in any maritime transaction or contract evidencing a transaction involving commerce is "valid, irrevocable, and enforceable."  Id. § 2.  Where a party seeks to compel arbitration pursuant to a written arbitration agreement, then "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  Id. § 4.  The purpose of the FAA is to "ensure judicial enforcement of privately made agreements to arbitrate."  Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219 (1985).  Congress enacted the FAA to overcome judicial resistance to arbitration and to declare a national policy favoring arbitration of claims that parties contract to settle in that manner.  Vaden v. Discover Bank, 556 U.S. 49, 58 (2009).

"The FAA also supplies mechanisms for enforcing arbitration awards: a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it."  Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 582 (2008) (citing 9 U.S.C. §§ 9–11).  In particular, any party to an arbitration proceeding may petition to vacate an

arbitration award on certain statutorily-specified grounds, such as corruption, fraud, evident partiality by arbitrators, misconduct, or abuse of power.  See 9 U.S.C. § 10.

Chapter 1 of the FAA imposes a three-month limitations period on actions to vacate arbitration awards, providing that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."  Id. § 12.

Meanwhile, "[t]he Convention on the Recognition and Enforcement of Foreign Arbitral Awards, [21 U.S.T. 2517,] also known as the New York Convention, is a multi-lateral treaty that requires courts of a nation state to give effect to private agreements to arbitrate and to enforce arbitration awards made in other contracting states."  Thomas v. Carnival Corp., 573 F.3d 1113, 1116 (11th Cir.2009).  The United States, as a signatory to the Convention, enforces this treaty through Chapter 2 of the FAA, which incorporates the terms of the Convention.  Id.  "The Convention by its terms applies to only two sorts of arbitral awards: 1) awards made in a country other than that in which enforcement of the award is sought, and 2) awards 'not considered as domestic awards in' the country where enforcement of the award is sought."  Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH, 141 F.3d 1434, 1440 (11th Cir. 1998).  Awards "not considered as domestic" include those involving parties domiciled or having their principal place of business outside the enforcing jurisdiction.  Id. at 1441.  "The Convention and Chapter 2 of the FAA exclusively govern[] arbitration between a citizen of the United States and citizens of a foreign country."  Costa v. Celebrity Cruises, Inc., 768 F. Supp. 2d 1237, 1240 (S.D. Fla. 2011), aff'd, 470 F. App'x 726 (11th Cir. 2012).

The Convention's so-called "residual" clause, 9 U.S.C. § 208, provides that "Chapter 1 [of the FAA] applies to actions and proceedings brought under this chapter to the extent that chapter is not in conflict with this chapter or the Convention as ratified by the United States."  In other words, "[t]he FAA applies residually to supplement the provisions of the Convention Act . . . . Congress gave the treaty-implementing statutes primacy in their fields, with FAA provisions applying only where they did not conflict."  Bautista v. Star Cruises, 396 F.3d 1289, 1299 (11th Cir. 2005) (citing 9 U.S.C. § 208).

There are "two causes of action in federal district court for enforcing arbitration agreements falling under the Convention: an action to compel arbitration pursuant to an arbitration agreement falling under the Convention, 9 U.S.C. § 206, and an action to confirm an arbitration award made pursuant to an agreement falling under the Convention, 9 U.S.C. § 207."  Czarina, L.L.C. v. W.F. Poe Syndicate, 358 F.3d 1286, 1290–91 (11th Cir. 2004).

A three-year statute of limitations applies to "confirm[]" arbitration awards under the Convention:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration.  The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

9 U.S.C. § 207.

Unlike Chapter 1 of the FAA, however, "[t]he Convention makes no mention of vacatur actions."  Ingaseosas Intern. Co. v. Aconcagua Investing Ltd., No. 09–23078–CIV, 2011 WL 500042, at *3 (S.D. Fla. Feb. 10, 2011).

Many courts, including this one, have thus found that the Convention does not even authorize actions to vacate arbitration awards.  See, e.g., id. ("In light of the plain text of the Convention, and case law that overwhelmingly confirms that the Convention provides for causes of action only for recognition and enforcement of arbitral awards, the Court cannot agree with Ingaseosas that the Court has jurisdiction over Ingaseosas' Motion to Vacate pursuant to the Convention."), aff'd on other grounds, 479 F. App'x 955, 959 (11th Cir. 2012) (finding case moot); Tesoro Petroleum Corp. v. Asamera (South Sumatra) Ltd., 798 F. Supp. 400, 405 (W.D. Tex. 1992) ("[I]n light of the Convention's overriding purpose to encourage the recognition and enforcement of arbitration agreements in international commerce, this Court simply cannot hold that the Convention authorizes a suit to vacate, like the one at issue in this case."); see also Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc., 126 F.3d 15, 22 (2d Cir. 1997) ("Indeed, many commentators and foreign courts have concluded that an action to set aside an award can be brought only under the domestic law of the arbitral forum, and can never be made under the Convention."); Lander Co., Inc. v. MMP Invs., Inc., 107 F.3d 476, 478 (7th Cir. 1997) ("[T]he New York Convention contains no provision for seeking to vacate an award, although it contemplates the possibility of the award's being set aside in a proceeding under local law, Art. V(1)(e), 21 U.S.T. at 2520, and recognizes defenses to the enforcement of an award."); Va. Sur. Co., Inc. v. Certain Underwriters at Lloyd's,

8

London, 671 F. Supp. 2d 996, 997–98 (N.D. Ill. 2009) ("[F]ederal courts have only such powers of decision as Congress has specifically conferred, and any express judicial power to entertain a vacatur of the award at issue here is conspicuously absent from the Convention. . . ."). But see Costa, 768 F. Supp. 2d at 1240 n.2 (finding court had subject matter jurisdiction over motion to vacate); PMA Capital Ins. Co. v. Platinum Underwriters Bermuda, Ltd., 659 F. Supp. 2d 631, 634–35 (E.D. Pa. 2009) (same), aff'd, 400 F. App'x 654, 645 n.1 (3d Cir. 2010); Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire & Marine Ins. Co., 668 F.3d 60, 71 (2d Cir. 2012) ("In this case, the district court had subject-matter jurisdiction under 9 U.S.C. § 203, which provides federal jurisdiction over actions to confirm or vacate an arbitral award that is governed by the Convention . . . ."). Requests to vacate arbitration awards under the Convention are generally found cognizable only when submitted defensively in opposition to motions to confirm. See, e.g., Hartford Fire Ins. Co. v. Lloyd's Syndicate 0056 ASH, No. CIV397CV00009AVC, 1997 WL 33491787, at *3 (D. Conn. Jul. 2, 1997) ("In the instant case, Reinsurers filed a cross-petition to vacate in opposition to Hartford's motion to confirm. The court concludes that this response was proper under the Convention.").

To the extent that the Convention does permit vacatur actions, authorities conclude that the FAA's three-month statute of limitations applies via the Convention's residual clause. See Restatement (Third) of the U.S. Law of International Commercial Arbitration § 4-32, reporter's note a(ii) (Tentative Draft No. 2, 2012) ("Because FAA Chapters Two and Three do not set forth a vacatur statute of limitations, FAA Chapter One supplies the limitation period for actions to vacate U.S. Convention awards. The limitations period

applicable to such action is accordingly three months, as set forth in 9 U.S.C. § 12."); 3 Ved P. Nanda & David K. Pansius, Litigation of International Disputes in U.S. Courts § 19:13 (2012) ("Because the Convention addresses confirmation, but seemingly does not address vacatur, the probable rule is to apply a three month time limit to an effort to vacate the award . . . ."); see also P.M.I. Trading Ltd. v. Farstad Oil, Inc., No. 00 CIV 7120 (RLC), 2001 WL 38282, at *3 n.2 (S.D.N.Y. Jan. 16, 2001) ("Under § 12 of the FAA (which applies in this respect since it is not in conflict with the Convention), a motion to vacate must be made within 'three months after the award is filed or delivered.'" (citations omitted)); cf. Jamaica Commodity Trading Co. Ltd. v. Connell Rice & Sugar Co., Inc., No. 87 CIV 6369, 1991 WL 123962, at *3 (S.D.N.Y. Jul. 3, 1991) (applying Convention's three-year statute of limitations to motion to vacate, but only where motion was filed in opposition to a motion to confirm).

In line with the foregoing, the Court finds Plaintiffs' action time-barred. The arbitration decision at issue was rendered on January 22, 2011. Plaintiffs filed this vacatur action under the Convention on June 19, 2012. Assuming that Plaintiffs' cause of action exists, the Court concludes that the FAA's three-month statute of limitations applies via the Convention's residual clause and that this action is therefore untimely.

### ii. Merits

Even if Plaintiffs' action were not time-barred, the Court would nonetheless find it subject to dismissal. The Court finds specifically that Plaintiffs' public policy arguments for vacating the arbitration decision are without merit.

Article V(2)(b) of the Convention provides a defense to enforcement of an arbitration award where "[t]he recognition or enforcement of the award would be contrary to the public policy of [the enforcing] country."   "[T]he Convention's public policy defense should be construed narrowly" and applies where enforcement the award "would violate the forum state's most basic notions of morality and justice."   Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie du Papier, 508 F.2d 969, 974 (2d Cir. 1974).

Plaintiffs' arguments for vacatur were addressed and rejected by this Court in an identical predecessor case, Costa v. Celebrity Cruises, Inc., 768 F. Supp. 2d 1237, 1240 (S.D. Fla. 2011), aff'd, 470 F. App'x 726 (11th Cir. 2012).  Costa involved different plaintiffs but addressed the same material facts, collective bargaining agreement, and arbitration outcome.  768 F. Supp. 2d at 1238–39.  The facts of Costa were as follows:

> Plaintiffs are citizens of India who worked as stateroom attendants for Defendant Celebrity Cruise's Inc.'s (Celebrity).  The terms of Plaintiffs' employment are governed by a Collective Bargaining Agreement (the CBA) entered between Celebrity and Plaintiffs' labor union (the Union).
> According to Plaintiffs, Celebrity breached the terms of their employment and the CBA by requiring Plaintiffs to share their earned gratuities with assistant cabin stewards and the chief housekeeper at the rates of $1.20 and $0.50 per day, respectively.  This allegedly wrongful conduct continued from August 31, 2001 through January 1, 2005.
> Accordingly, on October 21, 2009, Plaintiffs Camilo Costa and Bernard Fernandes submitted a demand for arbitration under the terms of the CBA to Celebrity and the Union, and, on December 9, 2009, Plaintiff Menino D'Acosta did the same.  On December 29, 2009, the Union formally demanded arbitration on behalf of all three Plaintiffs.
> Celebrity and the Union appointed Stanley H. Sergent as arbitrator (the Arbitrator).  On May 28, 2010, Celebrity moved to dismiss the demand for arbitration on the grounds that Plaintiffs' claims were non-arbitral due to Plaintiffs' failure to submit grievances under the CBA.  On July 27, 2010, a one-day arbitration hearing was held in Miami, Florida.  And on

August 28, 2010, the Arbitrator granted Celebrity's motion, holding that Plaintiffs' claims were non-arbitral for failure to exhaust the grievance procedure under the CBA.

On November 28, 2010, Plaintiffs filed the instant lawsuit seeking to vacate the arbitration award and a declaration that the Plaintiffs are not obligated to arbitrate their dispute. In the Amended Complaint, Plaintiffs seek to vacate the award under Chapter 1 of the Federal Arbitration Act (the FAA), 9 U.S.C. §§ 1–16; the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the Convention) and its implementing legislation, Chapter 2 of the FAA, 9 U.S.C. §§ 201–08; and, the Florida International Arbitration Act (the FIAA), Fla. Stat. § 684.0027. The crux of Plaintiffs' claimed defenses are as follows: (1) vacatur is appropriate under Chapter 1 of the FAA § 10(a)(3) and (4) because the Arbitrator failed to consider evidence that Plaintiffs' were "seafarers" and, therefore, exempt from the grievance process under Supreme Court precedent; (2) vacatur is appropriate under Chapter 1 of the FAA § 10(a)(3) and (4) because the Arbitrator failed to consider evidence of Plaintiffs' lack of knowledge as to the CBA's "hyper-technical" grievance procedure and of Celebrity's practice of concealing such information; (3) vacatur is appropriate under the Convention and the FIAA because Celebrity's motion to dismiss the arbitration was contrary to its position in previous litigation; and (4) vacatur is appropriate under the Convention because seafarer[]s have a right not to be subject to grievance requirements.

Id. (footnotes omitted). The Court first dismissed Plaintiffs' defenses that did not arise under the Convention—including their claim that the arbitrator failed to consider evidence that Plaintiffs were unaware of the "'hyper-technical' grievance procedure." Id. at 1240. As for Plaintiffs' remaining arguments that the arbitration decision violated public policy, the Court found as follows:

Plaintiffs' first reason why enforcement would violate public policy is that Celebrity did not previously seek to compel the grievance in a similar litigation. According to the Amended Complaint, seafarer Ignacio Lobo previously brought a lawsuit against Celebrity involving the same policy from which Plaintiffs sought redress in this arbitration, and Celebrity moved to compel arbitration without raising the grievance issue. See Lobo v. Celebrity Cruises, Inc., 488 F.3d 891, 894–95 (11th Cir. 2007). As Plaintiffs' argument goes, Celebrity cannot now attempt to enforce the grievance procedure because it did not previously attempt to do so, or—in

other words—Celebrity secured one precedent in the Lobo litigation and to go against that precedent now "constitutes a misuse of the judicial process, gamesmanship with out [sic] court system—and a manifest injustice prejudicing the Plaintiffs [sic] due process rights," (D.E. 14–1.)  The Court disagrees.

Whether Celebrity was estopped from or had waived its right to demand exhaustion of the grievance procedure in this dispute is not an issue of United States public policy.  See id.  It is simply an issue of the application of the law or estoppel or waiver, and therefore does not support the claimed public policy defense under the Convention.  And that is to say nothing of the myriad of reasons put forth by Celebrity in its briefings as to why such an estoppel or waiver argument would fail on the merits in any event.

Plaintiffs' second reason why enforcement would violate public policy is that seafarers have an unqualified right not to be subject to grievance exhaustion under federal maritime law.   In their Amended Complaint, Plaintiffs cite to U.S. Bulk Carriers, Inc. v. Arguelles, 400 U.S. 351 (1971).   The holding in Arguelles, however, speaks nothing of a seafarer's unqualified right not be subject to grievance exhaustion.  See id. Instead, the holding is only that the Labor Management Relations Act's remedy for the enforcement of arbitration and grievance provisions of certain collective bargaining agreements did not supercede a seafarer's statutory right to access federal courts for wage disputes under the Seaman's Wage Act.  See id.  Arguelles did not involve pre-arbitration grievance exhaustion or the Convention, much less any public policy regarding a seafarer's rights not to be subject to grievance proceedings prior to arbitration.

This point of distinction can be of no surprise to Plaintiffs.  It is the exact holding of the United States Court of Appeals for the Eleventh Circuit in Lobo, 488 F.3d 891, to which Plaintiffs cite numerous time throughout their brief.

> [T]he underlying basis of the Supreme Court's decision in Arguelles was the fact that there was nothing in . . . the LMRA to indicate an intent to abrogate the statutory right to sue in federal court afforded by the Seaman's Wage Act.
>
> In contrast, . . . the Convention compels federal courts to direct qualifying disputes to arbitration, while the Supreme Court found the LMRA to be silent on the matter.

Id. at 895 (further noting that the Supreme Court had no occasion to consider the Convention in Arguelles because oral argument occurred prior to its ratification).   Clearly, Plaintiffs' public policy pronouncement is unfounded.

768 F. Supp. 2d at 1241–42 (footnotes omitted).  The Court dismissed Plaintiffs' action with prejudice, id., and the Eleventh Circuit summarily affirmed, 470 F. App'x at 726.

Consistent with Costa, the Court finds Plaintiffs' arguments for vacating the arbitration award to be without merit.  Although some arguments have been reformulated or recategorized in this case, the substance of Plaintiffs' claims is the same: enforcing the thirty-day grievance exhaustion requirements disenfranchises seafarers and contravenes public policy, general maritime law, and Supreme Court precedent.  For the reasons articulated in Costa, the Court finds Plaintiffs' challenges meritless.  And as for Plaintiffs' claim that the arbitrator improperly ignored their sworn declarations at arbitration, to the extent that this claim is cognizable as a public-policy defense under the Convention, the Court finds it factually unsubstantiated.  The arbitrator's decision indicates that he considered Plaintiffs' sworn declarations but found them unpersuasive.

On this basis, as well as the alternative statute-of-limitations findings made supra, the Court grants Celebrity's Motion to Dismiss.

### b.  Motion for Sanctions

The Eleventh Circuit has endorsed imposition of sanctions for meritless challenges to arbitration awards.  See B.L. Harbert Intern., LLC v. Hercules Steel Co., 441 F.3d 905, 913–14 (11th Cir. 2006), abrogated on other grounds by Frazier v. CitiFinancial Corp., LLC, 604 F.3d 1313 (11th Cir. 2010).  In Hercules Steel, the Eleventh Circuit held as follows:

> When a party who loses an arbitration award assumes a never-say-die attitude and drags the dispute through the court system without an objectively reasonable belief it will prevail, the promise of arbitration is

broken.  Arbitration's allure is dependent upon the arbitrator being the last decision maker in all but the most unusual cases.  The more cases there are, like this one, in which the arbitrator is only the first stop along the way, the less arbitration there will be.  If arbitration is to be a meaningful alternative to litigation, the parties must be able to trust that the arbitrator's decision will be honored sooner instead of later.

Courts cannot prevent parties from trying to convert arbitration losses into court victories, but it may be that we can and should insist that if a party on the short end of an arbitration award attacks that award in court without any real legal basis for doing so, that party should pay sanctions.  A realistic threat of sanctions may discourage baseless litigation over arbitration awards and help fulfill the purposes of the pro-arbitration policy contained in the FAA.  It is an idea worth considering.

* * * * *

[T]his Court is exasperated by those who attempt to salvage arbitration losses through litigation that has no sound basis in the law applicable to arbitration awards.  The warning this opinion provides is that in order to further the purposes of the FAA and to protect arbitration as a remedy we are ready, willing, and able to consider imposing sanctions in appropriate cases. . . .

441 F.3d at 913–14.  The Hercules Steel Court declined to impose sanctions in that particular case, because (1) there was some authority, albeit weak, to support the plaintiff's arbitration challenge, (2) the opposing party never moved for sanctions, and (3) the plaintiff did not have the benefit of the notice and warning that the Hercules Steel opinion now provides.  Id. at 914.

The Eleventh Circuit subsequently imposed arbitration-related sanctions in World Business Paradise, Inc. v. Suntrust Bank, 403 F. App'x 468, 470–71 (11th Cir. 2010).  There, the appellants challenged an arbitration award on the basis of alleged partiality and misconduct, but they offered no evidence in support of their claims.  Id. at 469–70.  The Court of Appeals further stressed that the appellants "failed to muster any controlling authority to support their position," the appellee "expressly requested for this Court to

impose sanctions on appeal," and the appellants "had the benefit of the notice and warning that our <u>Hercules Steel</u> opinion provides about our willingness to impose sanctions to deter baseless contests of arbitration awards." <u>Id.</u> at 471.   The Court remanded the case for a determination of the appropriate amount of sanctions to be awarded.   <u>Id.</u>; <u>see also</u> <u>Fornell v. Morgan Keegan & Co., Inc.</u>, No. 6:12-cv-38-Orl-28TBS, 2012 WL 3155727, at *4 (M.D. Fla. Aug. 3, 2012) (awarding attorneys' fees and costs to defending party following objectively unreasonable challenge to arbitration award).

Here, however, the Court is not prepared to sanction Plaintiffs for asserting their claims in this action.   First, the Court cannot fault Plaintiffs for filing what the Court has found to be a time-barred complaint.   It is not clear or well-settled which limitations period applies to vacatur actions under the Convention, and the Court has reached its conclusion as to untimeliness primarily on the basis of secondary authority.   Second, although Plaintiffs' counsel litigated an identical arbitration challenge in <u>Costa</u>, and although this Court follows <u>Costa</u> in dismissing Plaintiffs' claims in this case, the Court cannot say that <u>Costa</u> authoritatively foreclosed Plaintiffs' arbitration challenge.   <u>Costa</u> was summarily affirmed by the Eleventh Circuit, but summary affirmance of a district court opinion is not binding precedent.   <u>Cultivos Yadran S.A. v. Rodriguez</u>, 258 F.R.D. 530, 553 (S.D. Fla. 2009).   And while the Court does conclude that Plaintiffs' challenge fails on the merits, the Court hesitates to say that Plaintiffs attacked the arbitration award "without any real legal basis for doing so." <u>Hercules Steel</u>, 441 F.3d at 913.

For these reasons, the Court denies Celebrity's Motion for Sanctions.

**V.     Conclusion**

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1.      Defendant Celebrity Cruises, Inc.'s Motion to Dismiss (D.E. 9, 7/11/12) is **GRANTED**.

2.      Defendant Celebrity Cruises, Inc.'s Motion for Sanctions (D.E. 10, 7/11/12) is **DENIED**.

3.      This case is now **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 13th day of March, 2013.

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**